Mr. Carter, please proceed. Good morning, Your Honors. May it please the Court, Adam Carter of the Employment Law Group on behalf of Army Staff Sergeant Ringo Chan. In this USARA case, the administrative judge never shifted the burden to the agency under this Court's precedent in Sheehan. This then for disciplining and removing Chan. This is not how USARA is supposed to work. The prima facie burden is supposed to be light, and then the burden of proof is supposed to be on the agency. Had the burden of proof been shifted to the agency properly, the agency would have had to prove what they're saying. I'm having a hard time understanding your burden-shifting argument. Do you cite the burden to a number-my recollection is to a number of different kind of genres-discrimination, McDonough, etc. So, is it your view that she had-what was her burden in the first instance, in your view? A very light prima facie burden to show that her military service was-motivated the action. And again, there's no question- Yes, Your Honor. And that's a light burden because it's just any-it's just-if it was anything at all. It's even lighter than, for example, Judge Gorsuch's opinion this summer in Bostock explaining that but-for causation, thought to be higher than motivating factor, is the straw that broke the camel's back. Presupposes a lot of other straw. And the point here is that- I don't understand. You've got to be a little more specific with me because it's just-you say it's very light. It's almost anything. She has to show-I mean, it's a substantial evidence review here, and it's whether or not she showed that it was a substantial or what she had to show in the first instance, what her burden was. Yeah. All she had to show was that her-that if the agency was answering truthfully, it would say that her military service was a factor. And we have a lot of evidence here. We have a pattern of close temporal proximity, which in most courts, that's enough. You've got the a write-up. As soon as she takes the next-as soon as she complains about the email that went out, about how she took the charging party to a certain room- Counselor, there's no doubt that she alleged these different incidents, but that's not the question. The question is whether she has established that her military service was a motivating factor. I mean, you've got to show that, and you keep arguing that all she has to do is make out a light, prima facie case. I agree with Judge Prost, except that I want you to get even a little bit more specific. What do you mean by light? That she doesn't have to prove this? Your Honor, by analogy, for example, let's say this is a race case or something or a- Doesn't she have to prove that her military status or service is a motivating factor? Doesn't she have to show that, establish that? Yes, Your Honor. And the question before this court is how heavy is that burden? It shouldn't be heavy at all. And in this case- Is that really the question that you're appealing? How heavy is that burden? Well, no. I'm appealing that the burden should have shifted. Because it is a light burden, the agency should be the one that should have to prove what it would have done had Chan not been in the military. And there's nothing in this record, for example, about how many investigators in the San Diego office have been given a written disciplinary letter for working 15 minutes of example. That had the agency been forced to bear its burden, which is- The reason why USERRA is set up this way is so that we don't disadvantage our men and women in uniform who are of necessity going to be bothering their civilian employers with the fact that they are taking off for military leave. This is going to get under the skin of civilian employers. It naturally does. Counselor, you have to show by a preponderance of evidence that the military service was at least a substantial or motivating factor in the adverse employment action. And unless you show that, you don't get into these other areas that you're talking about. But is this case really about whether the wrong legal standard was applied? Or is it about whether or not there's a failure to establish by preponderance of evidence a substantial or motivating factor in an adverse employment action? Your Honor, if I could encourage you to read this court's opinion in McMillan. The last time I was arguing before this court was in McMillan. And these facts are even stronger in favor of Sergeant Chan than they were in favor of Colonel McMillan. In McMillan's case, he had one testy email with his employer. He comes back from his military service. He gets written up for that. And then months later, he gets his tour renewed. And this court held not only that the agent didn't just simply remand back and let the agency prove, actually awarded McMillan the result and required the AJ below to establish a remedy. The point being that these facts, this temporal proximity on this record is so strong in comparison to what we had in McMillan that it is clear that Chan has borne this initial light burden on prima facie. Let me just also say how we would do it in a run-of-the-mill discrimination case of race or age discrimination. The prima facie case is, you know... Well, let me, before you spend a lot of time on that, let me just ask you, I mean, Sheehan is Sheehan, and we all agree that she... Is there anything in our case law that suggests or compels that we use a different rubric, like the McDonough-Douglas or the kinds of, you know, analyses that are applied in discrimination law here? We have a different statute, we have a different case law, so why are you telling us that the board erred here because McDonough-Douglas wasn't applied? No, Your Honor, I'm sorry, Your Honor, that's, let me be clear. Sheehan controls, Sheehan controls. I am just now saying by analogy, if the point, and the point of my long string cite on light prima facie burden in other anti-discrimination statutes is to just simply analogize to that, why should you, Sarah, which the legislative history makes clear was designed to protect our men and women in uniform and to make it clear, this should be even more clear than in an age discrimination case or a race discrimination case. That's my point, and I'm merely making the point that when you have a light prima facie burden, then Chan gets over that burden. The administrative judge made an error by not shifting the burden to the agency for it to prove that Chan's military service had nothing to do with the decisions. Let me also say that this is a good point to make, again, with respect to investigations. The EEOC is an investigative agency that, for example, would investigate General Motors in a race case. Well, if General Motors did no investigation of its own with respect to a race complaint, that would be evidence of discrimination. Here, the EEOC is the employer, and the EEOC cannot simply sit back and say, well, DOL Vets investigates this. We don't have to investigate it. No, no, no. As employer, you do. You are obligated to do that. Otherwise, we can draw the inference that we don't care about discriminating against our men and women in uniform, and so that's a very, very significant fact here to Judge Reyna's point that there's this sustained pattern of temporal proximity. There's no investigation by the EEOC as employer, and it's very clear, Your Honor, that from the get-go, as soon as she gets there and goes away on her military duty, they treat it like she's off on vacation, and when she comes back, they say, you've got to make up shifts. That's a violation. It seems to me you're making a different argument than what you start out in your brief. Your argument in the brief, and what I thought was before us, was that the agency applied the wrong legal standard here. That's right. Well, what you're arguing now is the application of a standard to the facts, or you're asking us to reweigh the factual findings that were made. No, Your Honor. Get back to your argument that the wrong legal standard was applied, and in doing so, explain what do you mean by light, a light prima facie case, and where in the regs or statute do we find that standard, a light standard? I notice I'm out of time. Should I answer now, and let me just take a minute to do that? Please respond to the question. Yes, ma'am. Judge Reyna, there aren't any cases that say that the prima facie in USERRA, that the prima facie case is supposed to be light. I am arguing that that is the case when you look at all of the other anti-discrimination statutes, and when you look at the legislative history of even easier for our men and women in uniform than it would be to make out a race case or something like that under Title VII. So that's where my argument is that it should be light. With respect to whether it's been met or not here, I think that the administrative judge, Dillow, made a grievous error, and she did so by not crediting the temporal proximity. You'll much military service. Well, Your Honor, that's a very dangerous precedent, and I urge this panel not to go down that road. Men and women in uniform, especially reservists like Chan, are having to go on a moment's notice to do their duty, and they don't get to decide. Counselor, you answered my question. I appreciate it. Thank you. I'll reserve the rest of my time. Thank you. Oh, all right. Well, can I just make a quick observation, because I'm not sure. Maybe I misunderstood what you were saying or how this case was argued. It's kind of difficult to do this by telephone, but I think towards the end of your argument, sir, you were talking about the EEOC being a special kind of agency, and you kind of attributed sort of an intentional motive to discriminate against people in the military or that they don't care about discrimination in the based on military service. And I think I didn't see that argument in your brief. I don't think that's kind of a necessary or necessarily appropriate argument to be made here, given the legal standards and what's going on. Your Honor, I would like to respond. Well, I would. I was making the point that they didn't investigate as an employer, an employer who is being challenged with discrimination is happening in the workplace. An employer has to investigate. And an employer here, the EEOC, they know this because they're the ones doing the investigation of, in my example, General Motors. But here, the EEOC, as employer, did no investigation. And had that been true of, in my example, General Motors, the EEOC would be the first one to say that is evidence of intent to discriminate. Okay. I take your argument. Thank you. Let's hear from the other side. May I begin, Your Honor? Ms. Kirshner. Yes, please. May it please the court. The board in this case applied the correct legal standard. It faithfully applied the she-hand factors. Specifically with regard to temporal proximity, the board did not ignore that factor. It gave a careful analysis. If we look at the, here we are concerned primarily about Mr. Green's motivation. That's where the Mr. Green, in May of 2018, placed Ms. Chan on a performance improvement plan and gave her an unsatisfactory rating. The board looked at the fact- Can I just ask you, Ms. Kirshner? Yes. Ms. Kirshner, this is Judge Crowe. Sorry to interrupt, but we're limited in time. Let me give you a hypothetical. I mean, this seems to me a bit unusual because there was a lot of military service, at least during her initial period, for rather lengthy periods of time. Let's assume we have an employee and we're dealing with one year for purposes of performance appraisal. That person is called away in the military for eight months of that 12-month period, that they are performing their military service under USERRA for the eight months of the 12 months. What is the practical matter that happens then? Obviously, the performance through the period is not going to be the same as another employee's would. Maybe there's training that necessarily would happen that this employee missed because she was on service. So what happens in that case where, just looking on the cold record, the employer may have been justified because the employee, in fact, didn't meet the sufficient progress in the performance standards, but it's a circumstance where her military service meant that she was away a lot and she couldn't reasonably have done so. What do we do in that case under USERRA? In that case, Your Honor, the employer has discretion to extend the performance period. And that is, in fact, what Mr. Green did initially for Ms. Chan. He extended her first performance period, not because she was on leave, but to give her an additional opportunity to improve her performance. So if the court will recall, he extended the performance. Yeah, but what about my hypothetical? You say the employer has discretion. Discretion means he can do it and he cannot do it. So what about in a hypothetical where the employer doesn't extend it and he says, this is a year period. You haven't met the expectations. And we all know that she couldn't possibly have met the expectations because she was absent for 80% of the period. You say the employer has discretion that suggests that it would be okay if the employer said, too bad, so sad, you're done. Is that what you mean? No, Your Honor. I meant that there was appraisal period to give persons additional opportunity to perform, not suggesting that there's a discretion to act in an arbitrary or capricious manner. And I take it that's the example you're presenting, where an employer makes a conclusion, which one could argue is on military service or not. I'm putting aside the question of whether or not it's motivated by military service. If there's a showing that the individual decision maker is doing this because he's motivated by the fact that she's on military service, then the government's in violation of military service. Okay. Can you also comment briefly on the exchange your friend and I had towards the end about his suggestion that the EEOC in particular, because that's what they do, they require other employers to investigate that they really fell here short for the failure to investigate this. You want to have any comment on that? Yes, Your Honor. The board commented on that specifically and considered whether that indicated that there was any discrimination or retaliation in the picture and found that there was not. The board pointed out that under this statutory scheme, it's the responsibility of Department of Labor to conduct the investigation. And in this case, there was a showing that the agency, the EEOC was completely cooperative with the Department of Labor and giving them the information they needed. I would also like to point to the testimony that's in the record from Ms. Park Gonzales, the deciding official who decided that Ms. Chan should be removed. She was questioned about Mr. Green, the director of communication all the time, that she knew about these performance difficulties, deficiencies of Ms. Chan. And she said specifically, based on all the communications, she had no reason to believe that Mr. Green was lying to her. So, you know, there's this reasonableness of the agency. And this is not a situation where the decision-maker totally ignores what's going on, which I think they're trying to imply by asserting that there's no investigation. Now, I'm not saying that what Ms. Park Gonzales did constitutes what would call, quote, unquote, an investigation. What I'm saying is that her testimony shows a very close relationship between her and Mr. Green, reporting to her all these difficulties with Ms. Chan's performance, and she's fully aware of them. And then she makes her final decision. And as I said, she testified explicitly. She had no reason, based on all of her contacts with Mr. Green and this long relationship and being fully informed, she had no reason to believe he was lying. Okay. Let me just ask you another thing. I mean, we've got several actions taken here. Obviously, the big one was the performance appraisal and the removal. But she, I mean, Ms. Chan received a reprimand on the day she returned from military duty, correct? Yes, that's correct, Your Honor. And a PIP on another day that she returned from military duty, correct? Yes, Your Honor. So, isn't this kind of an unusual case where there is an extreme proximity in time? And why is that not compelling evidence of discrimination? Well, in each case, you have to look at the, the judge has to look at the record before him. In this case, the board is essentially a judge and jury and looks at all of the evidence. And in both situations, the timing was explained, specifically with regard to the reprimand, which followed a period of leave. Mr. Green explained the timing of that. The reprimand dealt with incidences of misconduct that had occurred in July and early August through August 4th, August 4th being the day that she works the unauthorized overtime. And then she goes immediately on leave. Now, Mr. Green explained that he had to have the reprimand inform his superiors about it. And it takes time to issue a reprimand. And then what I would also point out, Your Honor, is reprimands are not something that government puts in the mail. It's not something that we send to somebody on email when they're off on military leave. A reprimand is handed to the employee when they are present in the office and they are asked to sign it. And in this case, Ms. John refused to sign it. But nonetheless, that's the procedure. She appears, she returns to work on the 22nd. That's the soonest time that and then in early August. And he does so at that time. So he fully explains the timing to the board and the board credits that explanation. So just the fact that two things coincide doesn't mean that there's a causal relationship. It might or it might not. But in this case, there's a full explanation for the timing. And the board made the same finding with regard to the actions that Mr. Green took in May of 2018. And by the same, I mean, I mean, similar, Your Honor. He made a similar finding an explanation of the timing. He credited the explanation. The reason that she was out in the period up until I think it's a excuse me, the period goes from April 3rd through May 6th. She's out for military leave. Mr. Green explains why she gets the unsatisfactory at that time. The reason is because he extended the prior period of performance. He gave her an additional 60 days to perform. And then gave her an evaluation in December of 2017. Then the next evaluation is due in May of 2018. And that explains the timing. And the board accepts that explanation for the record that is presented to the decision maker, which is the board in this case, which is assessing is temporal proximity. Is it a reliable indicator of Mr. Green's intent? And the board concludes, no, it's not. It's not. She hasn't shown by a preponderance of the evidence, which is her burden, that Mr. Green is motivated by hostility towards her military service or that he's retaliating because she filed a USERRA complaint. And so it's the board's duty to act as the jury and apply the preponderance of the evidence test. I could go into some of the other issues that have been raised. Briefly, I'll just say with regard to the discrimination area, I think what's really being missed is that in the Ms. Chan's analysis and arguments is the fact that in the discrimination area, really what you're arguing about is do you get to the jury or is your case going to be stopped by a summary judgment motion on the part of the employer? And that's very, very different from here, where the board is sitting as judge and jury and is deciding where the preponderance of the evidence lies and finds that the preponderance of the evidence does not show that Mr. Green was motivated in any respect, in any amount, by discrimination against her military service or retaliation because she filed a USERRA complaint. And here there's faithful application of the she-hand factors. I've gone through temporal proximity. The board looked at all four of the she-hand factors, found with regard to the second one that there was no inconsistencies between Mr. Green's actions. He was consistent in all respects. There's a careful analysis for she-hand factor three of the two remarks that Ms. Chan alleges that Mr. Green made. In one case, he's alleged to have looked at her calendar, which is in the record, appendix page 103, and to have remarked that's a lot of leave days. The board considers that and concludes that that's not evidence of him having a hostility to her going on military leave because, in short, actions speak louder than words. What Mr. Green does is ensure that she doesn't go on the intake calendar for July, having become aware of the fact that she is going on leave for a lot of days, or at least a lot of leave days are anticipated according to her calendar. The second remark he finds, based on credibility, that Mr. Green didn't make the remark that Ms. Chan is alleging that he made. He finds that she misunderstood him. With regard to the last factor, disparate treatment, he finds no disparate treatment. I feel like I'm going on and I'm not getting many questions. I think here, to sum it up, there's no error of law. I would point the court just to page 22 of the opinion where the board says specifically that, for her initial case, she was not required to show that she had satisfactory performance. Thank you. Thank you. Mr. Carter, I think you've got a few minutes remaining on rebuttal. Thank you, Your Honor. Just to answer your questions and your hypothetical, the embodied in USERRA is the concept that, and this is in 4313 of the statute, 4311 of the statute, the escalator position concept. The whole idea with USERRA is that while you're away on your military service, it's as if you have not gone. To your point, then the review should be the full year based on the four months. It's as if the service member has not gone. And so that is why even the obligation to make up intakes is a violation of USERRA. And so that starts and spoils the relationship from the get-go. We should not even be talking about Mr. Green's intent to discriminate at all until the agency is bearing the burden, until the burden has been shifted. This is the error of law that I was discussing with Judge Reyna. The point is that you meet the initial burden by showing the temporal proximity that we've shown here, the lack of investigation. All of that meets the prima facie burden that then it should have been shifted to the agency. And then we should then be talking about Mr. Green's intent to discriminate against military people. When somebody's 15 minutes late, I write them up, the non-military folks, just the same. Or when I see somebody's got a messy office, I write them up just the same. Or when charging parties make a complaint, I don't care about the truth of those either. I just worry about the fact that there are complaints and I put it into a PIP for those people too. None of that is in this record. And the reason it's not in this record is because the burden was never shifted to the agency. Thank you. We thank both sides and the case is submitted. That concludes our proceedings this morning. Thank you, Your Honor. The honorable court is adjourned from day to day.